# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:17-CV-00134-KDB-DSC

| | |
|---|---|
| DANIEL E. BRITTAIN, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V. ) | **ORDER** |
| ) | |
| MOTOROLA MOBILITY, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Motorola Mobility, LLC's ("Motorola" or "Defendant") Motion for Summary Judgment (Doc. No. 29), which Plaintiff Daniel Brittain ("Plaintiff") opposes. The Court has carefully reviewed the Motion and considered the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion and enter Summary Judgment in favor of Defendant.

## I.  RELEVANT BACKGROUND

Plaintiff originally filed this action in Superior Court of Catawba County against Lenovo (United States), Inc. ("Lenovo") and Motorola on June 28, 2017 (Doc. No. 1–1.). Motorola and Lenovo removed the action to this court on August 3, 2017. (Doc. No. 1.) Plaintiff voluntarily dismissed his claims against Lenovo on October 16, 2017. (Doc. No. 14.)

Plaintiff styled this action as a product liability case based on two distinct grounds: breach of implied warranty and negligence. Plaintiff indicates in his Opposition to Defendant's Motion for Summary Judgment that he will not proceed with his negligence-based claim. (Doc. No. 34, at 13.) Accordingly, the only issue before the court is whether or not Defendant is entitled to summary judgment on Plaintiff's breach of implied warranty claim.

1

The undisputed facts are as follows: In December 2014, Plaintiff purchased a Droid Turbo cellular telephone (the "Phone") manufactured by Motorola. (Doc. No. 30, at 2.) Plaintiff subsequently experienced hearing loss documented by physicians in March and April 2015. (*Id.* at 4.) He testified that this hearing loss was caused by the Phone emitting loud "firework" sounds on two occasions. (*Id.* at 2–3.) The exact dates of the two incidents are disputed, but it is clear that the first one occurred in late-January or early-February, 2015, and the second occurred April 2015. (*Id.*) At the time of both incidents, Plaintiff was performing a Google search using an application on the Phone. (*Id.*) At least the first incident occurred when Plaintiff pressed the "search" button on the Phone's touchscreen. (*Id.* at 2.) Plaintiff testified he did not notice anything abnormal about the Phone when either incident occurred, such as overheating or odor. (*Id.* at 2–3.) After both incidents, the Phone reverted to normal function. (*Id.*) Plaintiff continued to use the Phone until his service contract expired. (*Id.* at 4.)

Motorola filed the instant Motion on October 29, 2018, seeking summary judgment in its favor on all claims.[1] The parties presented oral arguments at a hearing before the Court on July 23, 2019. This matter is now ripe for adjudication.

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the

---

[1] Following discovery, Motorola also filed a motion to exclude Plaintiff's technical expert, John Sochia, III. (Doc. No. 27.)

2

governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S.

3

557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249–50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## III. DISCUSSION

The elements of a claim for breach of the implied warranty of merchantability in North Carolina are (1) defendant gave an implied warranty to plaintiff, (2) the product was defective or otherwise unmerchantable when it left defendant's control, (3) plaintiff was injured due to the defect or other condition, and (4) the plaintiff suffered damages. *DeWitt v. Eveready Battery Co., Inc.,* 355 N.C. 672, 683 (2002). For the reasons explained below, Plaintiff has failed to produce sufficient evidence that the Phone contained a defect, and that he was injured due to the alleged defect.

### A. Plaintiff has not produced sufficient circumstantial evidence to support the inference of a defect.

In *DeWitt,* the Supreme Court of North Carolina clarified the standard governing proof of product liability claims. Noting that the proof required for product liability claims is not as stringent as that required for negligence claims, it held that "a plaintiff need not prove a specific defect to carry his or her burden of proof in a products liability action based upon a breach of implied warranty of merchantability." *Id.* at 689. The defect element in a warranty

4

claim can be proved by either direct evidence *or* inferred from circumstantial evidence showing that the product malfunctioned when put to its ordinary use. *Id.* at 684. In briefing and during oral argument, Plaintiff made clear he asks the court to infer the presence of a defect based on circumstantial evidence. (*See, e.g.* Doc. No. 34, at 9.)

To aid in determining whether there is enough circumstantial evidence to allow for an inference of a defect in a particular case, the Supreme Court of North Carolina articulated a non-exclusive, six-factor list of types of circumstantial evidence which a court may consider at the summary judgment stage. *DeWitt*, 355 N.C. at 687. The factors are: (1) evidence that the product malfunctioned, (2) expert testimony as to possible causes of the malfunction, (3) the amount of time that passed between plaintiff getting the product and the occurrence of the malfunction, (4) similar accidents with the same product, (5) evidence that eliminates other causes of the malfunction or accident, and (6) proof that the malfunction does not happen unless a defect is present. *Id.* at 687–88.

Applying the first *DeWitt* factor, both parties concede that Plaintiff's testimony that the product malfunctioned is adequate, and both understand that evidence of malfunction "does not alone constitute sufficient circumstantial evidence to infer a product defect, but it allows the Court to continue by considering the other *DeWitt* factors." *Carlton v. Goodyear Tire & Rubber Co.*, 413 F. Supp. 2d 583, 590 (M.D.N.C. 2005).

Regarding the second factor, expert testimony as to possible causes of the malfunction, Defendant argues that Plaintiff's technical expert[2] "readily conceded he could not identify what actually caused the phone to emit the alleged sounds. (Doc. No. 30, at 17.) While he noted a

---

[2] The Court is doubtful that Plaintiff's technical expert would be found qualified to offer expert testimony under the *Daubert* standard.

spot of discoloration on one of the phone's unknown internal components, he admitted that he could not connect the discolored component to the phone's sound functions." (*Id.*) Plaintiff responds that his technical expert "found a brown spot on a resistor" and opined that "in his experience as a cellular phone technician burning or overheating 'could or might cause issues with the cellular phone speakers and volume.'" (Doc. No. 34, at 10.) Plaintiff further notes the technical expert testified that "if the resistors are overheated they could allow extra power to go to the speaker and cause it to make high-pitch noises or low-pitch noises if there was a surge of power." (*Id.*) On reply, Defendant argues that the technical expert "repeatedly admitted not knowing the function of the component exhibiting the spot or the connection between that component and the phone's sound capabilities." (Doc. No. 37, at 7.)

Despite his testimony that overheating could theoretically cause a power surge to the Phone's speakers, Plaintiff's technical expert utterly failed to connect the evidence of overheating he observed on a resistor to the Phone's speaker system. This makes his testimony as to a possible cause of the specific malfunction at issue in this case entirely speculative. The technical expert's theory is further undermined by the fact that Plaintiff observed no evidence of the Phone overheating at the time of the incidents. Therefore, the second *Dewitt* factor weighs against an inference that a defect exists.

As to the third factor, Defendant and Plaintiff both admit that Plaintiff owned the Phone for approximately one or two months before the first malfunction occurred. Defendant notes Plaintiff continued to use the Phone for at least two additional months before the second malfunction occurred. (Doc. No. 30, at 17–18.) Plaintiff points to *Carleton*, where the court noted that the third *DeWitt* factor weighed against a plaintiff who owned the product in question,

a vehicle tire, for sixteen months before the defect allegedly manifested. *See* 413 F. Supp. 2d at 590. At best, this factor is neutral for Plaintiff and alone demonstrates little.

Regarding the fourth factor, evidence of similar accidents with the same product, Defendant contends that Plaintiff has not proffered any evidence of any other Motorola phone emitting a sound loud enough to damage hearing. (Doc. No. 30, at 18.) Plaintiff responds that he has "presented evidence of two similar incidents with the same cellular telephone," apparently referencing the two alleged incidents out of which this action arose. (Doc No. 34 at 11.) Plaintiff also notes that his technical expert testified he had observed a Motorola phone make a "high-pitched beeping sound." (Doc. No. 34, at 11.) On reply, Defendant notes that Plaintiff has described the noise he heard as sounding like "fireworks," not beeping, which distinguishes Plaintiff's experience from that of his technical expert. (Doc. No. 37, at 8.) The Court agrees with Defendant that Plaintiff has produced no evidence of a similar accident. Therefore, the fourth factor weighs against an inference that a defect exists.

The fifth factor concerns evidence that eliminates other causes of the malfunction. Defendant argues that Plaintiff has not produced any evidence that the sound the Phone emitted resulted from a defect as opposed to another cause, in particular noting that Plaintiff was using the same application to perform a Google search on the Phone at the time of both incidents. (Doc. No. 30, at 18.) In response, Plaintiff argues that his technical expert ruled out any potential water damage to the phone, and that his treating physician ruled out certain other medical causes of his hearing loss. (Doc. No. 34, at 11.) Plaintiff does not address Defendant's point about the use of the application beyond stating that if Defendant contends that the application caused the sound, "then that is left to a motion to join a necessary party or for Defendant to produce evidence thereof." (Doc. No. 34, at 11, n.5.) However, once Defendant

7

moved for summary judgment on the grounds that there is no evidence of a defect in the Phone, it became Plaintiff's burden to come forward with circumstantial evidence sufficient to support an inference of the existence of a defect. As established by *DeWitt*, one form of such circumstantial evidence would be proof that other causes of the malfunction had been ruled out. The fact that Plaintiff produced no evidence eliminating the application as the cause of the malfunction weighs heavily against an inference that the claimed defect exists.

Finally, Defendant argues that Plaintiff has not produced any evidence that the alleged malfunction does not happen unless a defect is present. (Doc. No. 30, at 18.) Plaintiff argues that in his deposition, he testified that he had never experienced incidents of a cell phone emitting a noise "of the character or amplitude he heard during the incidents." He contends that "a product which is manufactured and marketed to transmit sounds, audio, and communication should not emit any noise which damages human hearing." (Doc. No. 34, at 12.) While this may be Plaintiff's opinion, it is not evidence that but for a defect in the Phone, the alleged noise would not have occurred. Accordingly, Plaintiff has not produced any evidence causing the sixth factor to weigh in his favor.

In summary, Plaintiff has satisfied the threshold first factor, but has presented scant evidence that can be used to infer the presence of a defect by application of the remaining five *DeWitt* factors. The inability of Plaintiff's expert to tie the alleged overheating to the Phone's speaker system renders his opinion speculative. Further, Plaintiff made no effort to demonstrate that the phone application he testified he was using at the time of both incidents did not create the noise. As such, Plaintiff has failed to produce sufficient circumstantial evidence to support the inference of a defect and summary judgment in favor of Defendant is appropriate.

**B. Plaintiff has not produced any expert testimony establishing that his hearing loss was caused by the alleged defect with the requisite degree of probability.**

Even if Plaintiff had sufficiently established that a defect exists, summary judgment in favor of Defendant is still appropriate because Plaintiff has not produced any expert testimony establishing that his hearing loss was caused by the alleged defect with the requisite degree of probability. To survive summary judgment on a products-liability claim under Chapter 99B–1.1 of the North Carolina General Statutes, a plaintiff must establish that an alleged product defect caused his injuries. *Jolley v. General Motors Corp.,* 55 N.C. App. 383, 385–86, 285 S.E.2d 301 (1982). In addition to expert testimony concerning the allegedly defective product, a plaintiff is obligated to come forward with expert medical opinion that his medical problems were caused by the defective product. *Ward v. Am. Med. Sys., Inc.,* 170 F. Supp. 2d 594, 599 (W.D.N.C. 2001), *aff'd,* 38 F. App'x 909 (4th Cir. 2002) (citing *Hensley v. Danek Medical, Inc.,* 32 F.Supp.2d 345, 350 (W.D.N.C. 1998)). Plaintiff has failed to do so.

The only evidence in the record forecasting the testimony of Plaintiff's medical expert is contained in Plaintiff's response to Defendant's interrogatory regarding testifying experts, and Plaintiff's medical record.[3] In response to Defendant's interrogatory, Plaintiff identified his treating physician as his medical expert and stated that the physician would be expected to testify

> concerning the treatment provided to Plaintiff from hearing loss and pain in his ears following large burst of noise emanating from the Plaintiff's cell phone. Dr. Harrill is expected to testify that it is his opinion that Plaintiff's hearing loss is consistent with a large amplified burst of noise . . . Dr. Harrill is of the opinion

---

[3] During oral arguments, counsel for Plaintiff asked the court to defer consideration of Defendant's motion and reopen discovery pursuant to Rule 56 so that the medical expert could be deposed. Rule 56 provides that a court may allow additional time to obtain affidavits, declarations, or to take discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(2). Counsel for Plaintiff told the Court that he did not depose the medical expert or supply a declaration because he wanted to retain some advantage of surprise at trial. This excuse does not support the reopening of discovery in a case that is more than two years old.

> that Plaintiff's hearing was damaged by a large burst of large scale amplified noise . . .

(Doc. No. 34-8, at 4.)

As an initial matter, Plaintiff's interrogatory response describing the medical expert's expected testimony is inadmissible hearsay and cannot be considered by the Court on a motion for summary judgment. *See Md. Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1251 (4th Cir.1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."); a*ccord Williams v. Staples, Inc.,* 372 F.3d 662, 667 (4th Cir. 2004) (explaining only admissible evidence may be considered in resolving motion for summary judgment). Accordingly, the only admissible evidence the Court may consider regarding the medical expert's opinion is Plaintiff's medical record.

However, even if the Court did consider this interrogatory response admissible evidence forecasting the medical expert's opinion, it would be insufficient to establish medical causation. *See Carr v. Dep't of Health & Human Servs. (Caswell Ctr.)*, 218 N.C. App. 151, 155 (2012) (explaining that "[s]tating an accident 'could or might" . . . or 'possibly' caused [an injury] is not generally enough" and that the statement must allege "that something 'more than likely' caused an injury or that the witness is satisfied to a 'reasonable degree of medical certainty'"). *See also Sparks v. Oxy-Health, LLC,* 134 F. Supp. 3d 961, 989 (E.D.N.C. 2015) (granting a motion for summary judgment in a product defect case for failure to allege a causal connection between the alleged product defect and the harm suffered, noting that "to survive a motion for summary judgment there must be sufficient evidence to indicate that the product defect was the "probable," rather than merely a possible cause of [the harm suffered]"). Stating that Plaintiff's hearing loss is "consistent with" a large amplified burst of noise does not establish that Plaintiff's hearing loss was "more than likely" or "probably" caused by the Phone.

Plaintiff's medical record does not establish the requisite probability of causation, either. Defendant argues that the medical expert expressed no opinion regarding causation in Plaintiff's medical record at all. (Doc. No. 30, at 12.) Defendant also notes that the medical records indicate that Plaintiff has a history of being exposed to excessive noise from shotgun blasts, and that his medical expert explored other medical causes for the hearing loss, such as autoimmune issues and the use of certain medications. (*Id.*)

In response, Plaintiff argues that the medical record indicates that Plaintiff experienced sudden hearing loss following "acoustic events" which "were described as blasts of noise from a cell phone." (Doc. No. 34, at 6.) Plaintiff provides no citation to the medical record. The only evidence that Plaintiff's medical expert connected the hearing loss to a noise emitted by the Phone is in a section of the record titled "Problem Story." This portion of the record merely memorializes Plaintiff's initial complaint to the physician, and states the Plaintiff is suffering from hearing loss "following acoustic blast from cell phone right 2/15." (Doc. No. 30–5, at 4.) The medical record also states that "[t]he hearing loss was preceded by Acute Noise Exposure," but does not state anywhere that Plaintiff's hearing loss was *caused* by the Phone specifically or noise exposure generally. (*Id.* at 5.) The record does not indicate that Plaintiff's medical expert came to any conclusion that the alleged defect in the Phone is the probable cause of Plaintiff's hearing loss.

The Court also notes that Plaintiff makes no attempt to rebut the expert opinions submitted by Defendant indicating that the Phone cannot have caused Plaintiff's hearing loss. Defendant's medical expert prepared a report containing six opinions: (1) the configuration of Plaintiff's hearing loss, as depicted on his audiograms, shows that his hearing loss did not result from noise exposure; (2) the Phone was not capable of creating a sound powerful enough to

11

cause hearing loss in the manner described; (3) based on the frequency of Plaintiff's hearing loss and the frequency of the Phone's peak output, Plaintiff's hearing loss *could not* have been caused by the Phone; (4) Plaintiff suffered unilateral hearing loss, but if the Phone was the cause and he was holding the Phone in front of his face, both ears would have been affected; (5) Plaintiff's audiograms demonstrate he experienced hearing loss sometime between March 3, 2015 and March 19, 2015, but neither incident occurred during that time frame; and (6) alternative causes for the hearing loss exist and were not adequately evaluated. (Doc. No. 30, at 6–8.) In addition, Defendant's technical expert tested the Phone itself and opined that its maximum sound level was 79 to 86 decibels. (Doc. No. 30–8, ¶ 19.) This is below the 140 decibel threshold required to damage hearing, according to Defendant's medical expert. (Doc. No. 30, at 6.)

In summary, Plaintiff has failed to provide evidence that his medical expert concluded that Plaintiff's hearing loss was more than likely caused by the Phone. In addition, he does not rebut or dispute the opinions of Defendant's experts that the Phone *cannot* have caused his hearing loss. For these reasons, Plaintiff has failed to provide sufficient evidence of causation to support his claim, and summary judgment in favor of Defendant is appropriate. *See Sparks*, 134 F. Supp. 3d at 989.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Defendant's "Motion for Summary Judgment" (Doc. No. 29) is **GRANTED,** Plaintiff's Complaint is **DISMISSED**, all other pending motions are **DENIED** as moot, and **SUMMARY JUDGMENT** is hereby entered in favor of Defendant on the claims in this action. The Clerk of Court is directed to close this case.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 2, 2019

Kenneth D. Bell
United States District Judge